UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE LAFOUNTAIN,
        Plaintiff,

                                  Case No. 1:07-cv-076

-v-

                                  HONORABLE PAUL L. MALONEY
                                  HONORABLE ELLEN S. CARMODY

ANTHONY MARTIN,
        Defendant.

OPINION AND ORDER
ACCEPTING REPORT AND RECOMMENDATION OVER OBJECTIONS

This Court has before it a Report and Recommendation (Dkt. No. 35) and Plaintiff Lafountain's Objections (Dkt. No. 39).

I.  BACKGROUND

Plaintiff Wayne Lafountain is a prisoner under the control of the Michigan Department of Corrections (MDOC).  On January 25, 2007, Plaintiff filed a complaint against Defendant Anthony Martin, a prison guard, alleging retaliation in violation of his First Amendment rights and a similar claim under Michigan law.  The complaint was referred to Magistrate Judge Ellen S. Carmody. Defendant Martin was served with the summons and complaint on April 6, 2007.  Defendant filed a motion for an extension of time to respond (Dkt. No. 6).  Defendant was given until May 30, 2007 to file his answer to the complaint (Dkt. No. 10).  On April 30, 2007, Defendant filed a motion to dismiss (Dkt. No. 11) on the basis of failure to exhaust administrative remedies.  Plaintiff filed his response (Dkt. No. 15) on May 25, 2007.  On May 30, in lieu of an answer to the complaint, Defendant filed a second motion for extension of time (Dkt. No. 17).  Defendant was given until July

27, 2007 to file an answer to the complaint (Dkt. No. 21).[1]  Defendant filed a reply (Dkt. No. 23) to Plaintiff's response on June 5, 2007.

On June 18, 2007, Magistrate Judge Carmody issued an order converting Defendant's motion to dismiss into a motion for summary judgment (Dkt. No. 24). Plaintiff filed additional exhibits on July 3, 2007 and, with leave of the court, a supplemental response brief (Dkt. No. 31) on July 24, 2007. On February 8, 2008, the Magistrate Judge issued this Report and Recommendation (R&R).

II.  STANDARD OF REVIEW

After being served with a Report and Recommendation issued by a Magistrate Judge, a party has ten days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive, or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). The United States Supreme Court has held that the statute does not "positively require[] some lesser review by the district court when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *Sullivan*, 431 F.3d

---

[1] To date, Defendant has not filed an answer to the complaint. Defendant should have filed an answer to the complaint when the motion to dismiss was converted into a motion for summary judgment. *See generally*, *Jones v. Bock*, 549 U.S. ___, 127 S.Ct. 910, 919-921 (2007) (discussing the application of pleading requirements under FED. R. CIV. P. 8 to suits filed under the Prison Litigation Reform Act).

at 984. *See also Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice). The district court judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

This Court conducted a de novo review. Having read the file, including the report, recommendations, objections and relevant authority, the Report and Recommendation is accepted over objections.

III. ANALYSIS

    A. MOTION AND RESPONSE

A short review of the documents and issues is in order. Defendant initially filed a motion to dismiss raising the issue of exhaustion of administrative remedies. Defendant admits in his brief in support (Dkt. No. 12 at 3) that failure to exhaust is an affirmative defense that must be raised by a defendant, citing *Jones v. Bock*, 549 U.S. ___; 127 S.Ct. 910 (2007). Defendant argues Grievance MCF 04-07-00444-28bc (Grievance 444) was rejected because it raised multiple issues. Defendant argues Plaintiff did not appeal Grievance 444 and instead filed two new grievances, MCF 04-07-00471-28A (Grievance 471) and MCF 04-07-00472-28A (Grievance 472). Defendant argues those grievances were properly denied as being duplicative of Grievance 444. Defendant concedes Plaintiff appealed these two grievances through Step III of the internal appeals process. Defendant concludes duplicative grievances do not fulfill the "proper exhaustion" requirement under 42 U.S.C. § 1997e(a). (Brief at 7). The Magistrate Judge converted the motion to dismiss to a motion for summary judgment.

Plaintiff asserts, in his response, he properly exhausted his administrative remedies. Plaintiff alleges he was told by the Grievance Coordinator to separate the issues raised in Grievance 444 and

3

to file new grievances. Plaintiff argues the rejection of his Step III appeal of Grievance 472 was an abuse of discretion because it was denied for raising multiple issues, rather than on the basis of duplicative filings. (Response at 7). Plaintiff alleges the procedural rejections of his grievances create impenetrable barriers which undermine his ability to raise meritorious issues, a potential problem acknowledged by the United States Supreme Court in *Woodford v. Ngo*, 548 U.S. ___; 126 S.Ct. 2378 (2006).

Plaintiff's second argument alleges a violation of the *Pell/Turner*[2] standards for assessing restrictions placed on prisoners. Plaintiff explains that in order for him to have an "alternative means" of communicating his grievance, he must be able to rewrite and resubmit a grievance that has been dismissed for being procedurally defective rather than being forced to appeal the procedural default. (Response at 17).

Plaintiff's third argument asserts *Woodford* should not be applied to his grievance because the opinion was released after he filed and exhausted his administrative remedies. (Response at 18).

B. REPORT AND RECOMMENDATION

The R&R discusses five separate grievances filed by Plaintiff starting in December 2003. Only Grievances 471 and 472 were appealed through Step III. The Magistrate Judge finds Plaintiff failed to exhaust his administrative remedies with regard to any of the grievances mentioned other than Grievances 471 and 472. No party objects to this conclusion. In addition, the Magistrate Judge concludes Grievance 471 is irrelevant to the complaint. No party objects to that conclusion. Accordingly, in order to survive Defendant's motion, Plaintiff must have exhausted his administrative remedies in Grievance 472.

---

[2] *Pell v. Procunier*, 417 U.S. 817 (1974) and *Turner v. Safley*, 482 U.S. 78 (1987).

The Magistrate Judge first concludes the holding in *Woodford* applies retroactively. (R&R at 14). As a result, Plaintiff must have properly exhausted his administrative remedies as that concept is outlined in *Woodford,* rather than by the standards for exhaustion prior to *Woodford*.

Second, the Magistrate Judge examines whether the MDOC applied its grievance policy in an abusive manner. The Magistrate Judge notes *Woodford* failed to address how a court should handle situations where a grievance is rejected on grounds not supported by the record, whether the prison must have relied upon the procedural bar and what level of review should be applied. (R&R at 15). The Magistrate Judge, based on discussions in *Woodford*, examines procedural default in habeas cases and analogizes that concept to this matter. The Magistrate Judge then considers whether the last administrative decisionmaker relied on an established procedural rule and whether a reasonable reviewer could have determined the prisoner actually violated the established rule. (R&R at 17). The Magistrate Judge concludes Grievance 472 is not truly duplicative, "as a matter of law," of Grievances 471 or 444 within the meaning of the MDOC policy. (*Id.*). Furthermore, the Magistrate Judge concludes whether the two grievances were duplicative remains a question of fact. (*Id.* at 18).

The Magistrate Judge then notes what Plaintiff pointed out in his response, that the Step III investigator did not reject Grievance 472 on the basis that it was duplicative, but because it contained multiple claims. The Magistrate Judge described Grievance 472 as one which "complains of prior retaliatory conduct for which Plaintiff appears to seek individualized remedies." (R&R at 19). The Magistrate Judge concludes the prior instances are not related to the retaliation claim because "they seek relief for multiple incidents of alleged misconduct occurring over a period of six months." (R&R at 20). Accordingly, the Magistrate Judge concludes the grievance was reasonably rejected

5

at Step III and the grievance was not properly exhausted under *Woodford.*. (*Id.*).

Finally, the Magistrate Judge turns to Plaintiff's *Pell/Turner* argument. The Magistrate Judge concludes a grievance procedure was available to Plaintiff under the meaning of the Prison Litigation Reform Act (PLRA) and therefore the grievance process, as applied to Grievance 472, was reasonably related to a legitimate governmental interest. (R&R at 23).

C.  OBJECTIONS

Plaintiff lists five objections in his response to the R&R. Plaintiff's first objection is that the Magistrate Judge improperly lawyered on behalf of the Defendant. Plaintiff argues the motion to dismiss should have been rejected because the exhaustion requirement is an affirmative defense and not a pleading requirement. Plaintiff argues the Magistrate Judge "engaged in judicial steering" in order to, sua sponte, raise an affirmative defense claim that was never asserted by Defendant. (Objection at 3). Plaintiff asserts Defendant moved for dismissal on the basis that the grievance was duplicative, not on the basis that the grievance raised multiple claims. Plaintiff argues Defendant must raise the affirmative defense or it is deemed waived. Plaintiff concludes the Magistrate Judge improperly acted as an advocate for Defendant by raising an affirmative defense claim that was not asserted in any of Defendant's motions or briefs.

Plaintiff's second objection asserts the Magistrate Judge's recommendation is inconsistent with Rule 8(c) of the Federal Rules of Civil Procedure. Plaintiff reasons Defendant must plead exhaustion as an affirmative defense in his first responsive pleading or the defense is waived. Plaintiff asserts Defendant only argued Plaintiff failed to exhaust the grievance because it was duplicative. Plaintiff concludes Defendant waived his ability to argue failure to exhaust based on multiple issues. Plaintiff asserts this is especially true when the Magistrate Judge converts the motion

to dismiss into a motion for summary judgment.

Plaintiff's objection is not a reason to reject the R&R. In *Jones*, the Supreme Court held that exhaustion of administrative remedies is an affirmative defense which prisoners are not required to specifically plead or demonstrate in their complaints. 127 S.Ct. at 921. The Supreme Court placed the burden on a defendant to show the plaintiff failed to exhaust when asserting failure to exhaust as an affirmative defense. *Id.* Accordingly, a 12(b)(6) motion to dismiss will generally not be granted for failing to exhaust unless the plaintiff states in the complaint that administrative remedies were not exhausted. *Id.* at 920-921. The Federal Rules of Civil Procedure allow a defendant the option to raise certain defenses by motion in lieu of filing an answer. *See* Fed. R. Civ. P. 12(b). When a defendant files a 12(b)(6) motion which presents matters outside the pleading, the court may, with notice, treat the motion to dismiss as a motion for summary judgment. *Id.*. In such an event, the parties shall be given a reasonable opportunity to present all material made pertinent by Rule 56. *Id.*

The Magistrate Judge did not act improperly in converting the motion to dismiss into a motion for summary judgment. The Magistrate Judge opted to convert the motion to dismiss into a motion for summary judgment because the motion presented matters outside the pleadings. Both parties were afforded the opportunity to present material made relevant by the conversion. Defendant did not file any additional material. Plaintiff filed additional documents and an additional response.

The Magistrate Judge did not improperly raise an affirmative defense sua sponte. Defendant correctly points out that grievance was initially denied as duplicative and the appeals were denied under MDOC PD 03.02.130, without specifically identifying the reasons for the denials at Step II or Step III. (Brief in Support at 7). Plaintiff, in his response, points out that the Step III rejection was on the basis that the grievance raised multiple claims. (Response at 7). The Magistrate Judge, in

7

reaching her conclusion, relied on the factual record and the assertions of the parties to conclude the grievance was not properly exhausted.

Plaintiff's third objection is that the Magistrate Judge improperly relied on habeas law governing procedural default instead of relying upon administrative law.  Initially, Plaintiff argues Michigan administrative law precludes the MDOC from issuing any ruling, fact-finding or otherwise, on the constitutional claim alleged in the grievance.  (Objection at 12-13).  Plaintiff argues the Magistrate Judge should not have relied on habeas law in accepting the Step III coordinator's conclusion because of the obvious differences between a state court system and the MDOC grievance procedures. (Objection at 13-15).  Plaintiff insists *Woodford* requires the application of administrative rather than habeas law.  (Objection at 16-17).

In *Woodford*, the Supreme Court held that a procedurally defective administrative grievance has not been properly exhausted.  126 S.Ct. At 2382.  The Supreme Court examined habeas and administrative law to determine what constitutes "exhausted" under the 42 U.S.C. § 1997e(a). *Woodford*, 126 S.Ct. at 2384.  The Supreme Court noted, under habeas law, when a prisoner fails to comply with state deadlines, the prisoner is generally barred from asserting claims in federal court because the claims have been "procedurally defaulted." *Id.* at 2387.  The doctrine of procedural default is analogous to this situation because Plaintiff's grievances were denied on the basis of failing to comply with the procedural rules.

Plaintiff's objection is not a reason to reject the R&R.  The habeas doctrine of procedural default is clearly analogous and useful in this situation.  Contrary to Plaintiff's assertion, *Woodford* does not require the use of administrative law.  Also contrary to Plaintiff's assertion, the MDOC is

8

not precluded from reviewing his grievances.[3] Under Plaintiff's approach to the grievance procedure, every prisoner would label their grievance as a constitutional claim, precluding MDOC from reviewing it under state administrative law, and would use the grievance as a basis for filing a complaint in federal court. Such approach clearly undermines the twin justifications for the doctrine of exhaustion in administrative law, preservation of administrative agency's authority and efficiency. *See Woodford*, 126 S.Ct. at 2385.

Plaintiff's fourth objection argues that MDOC misapplied the grievance policy and that the application violates the *Pell/Turner* standards. No party has filed an objection to the Magistrate's conclusion that Grievance 472 is not clearly duplicative of Grievance 444. The issue here is whether the Step III denial of Grievance 472 on the basis that it contained multiple issues was proper and whether that denial violates the standards under *Pell/Turner*. Plaintiff asserts the analysis performed by the Step III coordinator evidences that he looked at Grievance 444 not Grievance 472. (Objection

---

[3]Plaintiff cites authority for this proposition in several places in his objection. (Objection at 12-13 and 21-22). Plaintiff's argument is misplaced because his *grievance* does not allege that the grievance procedure or its application is unconstitutional. In *Diggs v. State Bd. of Embalmers and Funeral Directors*, 32 N.W.2d 728 (Mich. 1948), the Michigan Supreme Court held that a trial court need not render a decision on the merits when a plaintiff challenges the constitutionality of the statute creating or governing an administrative body through an appeal of the decision rendered by that body because the appeal itself would assume the validity of the challenged statute. *See Asta v. Michigan Dept. Of Revenue*, 61 N.W. 2d 608, 611 (Mich. 1953). Under Michigan law, when one wishes to challenge the constitutionality of such a statute and seek injunctive relief, the litigant need not follow the appellate procedure provided under the statute. *Michigan Canners and Freezers Ass'n v. Agricultural Marketing and Bargaining Bd.*, 245 N.W.2d 1, 4 (Mich. 1978). This rule of administrative law has been applied to the Michigan Bureau of Correctional Facilities. *See Dickerson v. Warden, Marquette Prison*, 298 N.W.2d 841 (Mich. App. 1980) (holding the Bureau was not empowered to adjudicate the prisoner/plaintiff's claim that he was denied due process even though the disciplinary hearing rules were followed). While Michigan law might not require Plaintiff to exhaust his administrative remedies in order to challenge the grievance procedure in state court, federal law requires Plaintiff to exhaust those remedies in order to bring a suit in federal court. *See* 42 U.S.C. § 1997e(a) and *Jones*, 127 S.Ct. at 919.

at 18).

MDOC policy allows "the Grievance Coordinator" to reject a grievance for multiple reasons, including when a grievance raises issues that are duplicative of an earlier grievance or if it contains multiple unrelated issues. MDOC Policy Directive 03.02.130(G)(1)(effective Dec. 12, 2003).[4] "Grievance coordinators" are those individuals assigned to review the grievance at each stage of the process. *Id.* at ¶ P. A Step I Grievance Coordinator "shall determine if the grievance should be rejected pursuant to this policy." *Id.* at ¶ Y. A Step II Grievance Coordinator "shall determine if the grievance should be rejected pursuant to this policy." *Id.* at ¶ EE. The Step III procedure is outlined under Section HH and II of MDOC PD 03.02.130, but does not mention the basis on which a Step III grievance may be rejected. The policy does, however, indicate the a Step III grievance may be rejected. *Id.* at ¶ II ("Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system. The tracking system shall include information on the subject matter of each grievance received and, for rejected grievances, the basis for the rejection").

The Step III Grievance Coordinator did not misapply the policy. The policy allows each Grievance Coordinator to conduct a functional de novo review of the grievance. It provides no requirement that a rejection at one level must be the basis for rejection at the next step of the grievance procedure. Furthermore, it is not clear that the Step III Grievance Coordinator looked at Grievance 444 rather than Grievance 472. Grievance 472 states that it is "a retaliation grievance in which I name first-shift unit officer, Martin, as respondent." (Exhibit 5 to Defendant's brief). The

---

[4]This policy directive has since been amended. The current version of MDOC PD 03.02.120 contains the same language, but in different paragraphs.

incidents identified by the Step III Grievance Coordinator are all included in Grievance 472.

The Magistrate Judge correctly outlined the appropriate tests of a prison restriction under *Pell* and *Turner*. (R&R at 20-21). Plaintiff alleges, but has not demonstrated, that the grievance procedure or its application fails to operate in a neutral fashion. *See Pell*, 417 U.S. at 827-828. Plaintiff also argues the Magistrate Judge misstates the fourth prong of the *Turner* test. (Objection at 20-21 referencing R&R at 21). Under the fourth prong, the restriction or regulation must not be an "exaggerated response" to the problem. *Turner*, 482 U.S. at 90. The plaintiff has the burden of establishing that the restriction or regulation is exaggerated by pointing to ready alternatives which fully accommodates his or her rights at a de minimis cost to legitimate penological interests. *Id.* ("prison officials do not need to set up and then shoot down every conceivable alternative method").

This Court agrees with the Magistrate Judge's conclusion that the grievance procedure is reasonably related to a legitimate government interest. Furthermore, its application to Plaintiff has not violated the *Pell/Turner* tests. Plaintiff could have filed separate grievances related to each of the incidents recounted in the grievance. While Plaintiff may understandably be frustrated that his grievance has not been addressed on the merits, the requirements that grievances be submitted timely, raising one issue in sufficient detail, and not duplicate issues previously grieved are rationally related to legitimate penological interests.

Plaintiff's fifth objection challenges whether the *Woodford* "proper exhaustion" requirement applies to his grievance given that his grievance was filed prior to the publication of that opinion. (Objection at 23). This Court is bound by precedent on this issue. The Magistrate Judge correctly concluded the holding in *Woodford* applies to this matter. *See Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97 (1993); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543 (1991); *Hatchett*

*v. United States*, 330 F.3d 875, 882-883 (6th Cir. 2003); *Toms v. Taft*, 338 F.3d 519, 529 (6th Cir. 2003). Plaintiff's fifth objection is not a reason to reject the R&R.

## IV. CONCLUSION

The conclusions in the Report and Recommendation are supported by the record and in the law. Plaintiff's objections do not provide a reason to reject any of the conclusions in the R&R. The Magistrate Judge properly converted the motion to dismiss into a motion for summary judgment. The Magistrate Judge did not act as an attorney for Defendant. The application of habeas law's approach to procedural default to this claim under the PLRA and section 1983 was appropriate. The MDOC did not act improperly when denying Plaintiff's grievance at Step III on the basis that the grievance raised multiple issues. Finally, the proper exhaustion holding in *Woodford* does apply to Plaintiff's complaint.

## ORDER

The Report and Recommendation (Dkt. No. 35) is **ACCEPTED** over Plaintiff's objections. Defendant's motion to dismiss (Dtk No. 11), which was converted to a motion for summary judgment, is **GRANTED.**

This action is **TERMINATED.**

**IT IS SO ORDERED.**

Date:   April 28, 2008                                    /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge