UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE LaFOUNTAIN,

       Plaintiff,                                        Hon. Paul L. Maloney

v.                                                            Case No. 1:07 CV 76

ANTHONY MARTIN,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Martin's Motion for Summary Judgment</u>, (dkt. #61), and <u>Defendant Martin's Motion for Summary Judgment</u>, (dkt. #99). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motions both be **denied**.

## BACKGROUND

The following allegations are contained in Plaintiff's verified complaint. (Dkt. #1). On or about October 10, 2003, Plaintiff was transferred to the Muskegon Correctional Facility (MCF). Plaintiff, a non-smoker, was housed "with a prisoner who smoked in the cell." Plaintiff's requests to be housed with a non-smoker were ignored. On or about December 30, 2003, Plaintiff was transferred to another cell, but not one of his choosing. That same day Plaintiff filed a grievance against two prison guards, neither of whom are party to this action, challenging the process by which his requests to be transferred to a different cell were resolved.

On January 5, 2004, Plaintiff discovered that his personal laundry bag had been delivered to the wrong cell.  Plaintiff approached Defendant Martin and asked permission to retrieve his laundry bag.  Defendant refused Plaintiff's request.  Plaintiff then requested a prison grievance form "for the purpose of citing defendant Martin with employee misconduct."  Defendant Martin repeatedly refused Plaintiff's request and eventually told Plaintiff to "'shut-up' or he would 'tear the place down' with plaintiff."  Immediately thereafter, Defendant Martin approached "a group of black prisoners" and informed them of Plaintiff's pending grievance.  Later that day, Defendant Martin refused Plaintiff's request for a pass to go to the prison law library.  On January 5, 2004, Plaintiff submitted a grievance against Defendant Martin regarding these matters.

After learning that Plaintiff had filed a grievance against him, Defendant Martin began daily speaking with a group of African-American prisoners, which included Plaintiff's cellmate, informing them that Plaintiff had "snitched" on "all smoking prisoners in the unit."  Defendant Martin also told these prisoners that Plaintiff was a "snitch" and a "stalker."  Plaintiff's cellmate began referring to Plaintiff as a "snitch," "rat," and "sexual predator" who was "stalking" female employees.  Plaintiff's cellmate then began challenging Plaintiff to "fight with him."  On January 31, 2004, Plaintiff requested that he be transferred to a different cell.  Four days later, Plaintiff was placed in a different cell.

Beginning in "the middle of February 2004," two of the prisoners to whom Defendant Martin disparaged Plaintiff began "to stalk" Plaintiff and call him a "snitch," "rat," "white bitch," "baby-raper," and "predator."  These prisoners also "openly discussed" that they were trying to intimidate Plaintiff to leave the unit.  On one occasion, Defendant Martin, accompanied by one of these prisoners, approached Plaintiff and told him that "the world would be better off without you in it."  Defendant

Martin also told Plaintiff that he was a smoker and would not "give up his smoking." Defendant Martin also stated that "someone should see to taking Plaintiff's music."

After filing his January 5, 2004 grievance against Defendant Martin, Plaintiff was informed by other prisoners that Martin was "spreading gossip" that Plaintiff was a "sexual predator" who "stalks" female employees. Plaintiff also witnessed Defendant Martin engaging in such behavior. Various inmates began consistently referring to Plaintiff as "baby-raper," "stalker," and "sexual predator." Prisoners also began to "make a point of walking by plaintiff's cell. . .yelling 'snitch,' or 'rat' or 'baby-raper' so that all other prisoners and defendant Martin could plainly hear."

In early March 2004, two of the prisoners that had been taunting Plaintiff threatened him with "physical violence including killing plaintiff." On subsequent occasions, Plaintiff found himself "surrounded by six or more" other prisoners. Finding that he had been "pushed to the breaking point," Plaintiff "believed it would be necessary to obtain a weapon for self-defense." Toward this end, Plaintiff "began to actively seek a sharp piece of metal, and it was common knowledge that someone was about to be stabbed."

On March 8, 2004, Plaintiff submitted a grievance directly to the Director of the MDOC accusing Defendant Martin of engaging in racial discrimination. Specifically, Plaintiff alleged that Defendant Martin, by daily referring to Plaintiff as a snitch to other prisoners, was "causing said prisoners to" stalk, threaten, and provoke Plaintiff. The following day, Plaintiff was confronted by two of the prisoners who "daily accosted" him. These prisoners informed Plaintiff that they would "stop accosting" Plaintiff if he would "discontinue any complaint to Lansing." Later that day, Plaintiff "wrote the MDOC Director. . .asking to discontinue the grievance" he submitted the previous day.

Approximately three days later, Defendant Martin informed a group of prisoners that Plaintiff "likes to send letters to Lansing."

Sometime in April 2004, Defendant Martin began meeting with Plaintiff's cellmate, informing him that Plaintiff "snitches on all smoking prisoners" and is a "sexual predator," "baby-raper" and "stalker." Thereafter, Plaintiff's cellmate began stealing Plaintiff's belongings. Plaintiff's cellmate also began smoking in their cell and "daring" Plaintiff to "snitch on him for doing so." The two then "had a fist-fight, which plaintiff lost." In early June 2004, Plaintiff was moved to a different cell.

On June 26, 2004, Plaintiff's "music" (e.g., cassette tapes, tape-player, and headphones) was stolen from his cell. None of Plaintiff's cellmate's belongings were stolen. Several days later, Plaintiff observed a group of African-American prisoners selling his stolen property to other prisoners. One of the prisoners that had previously accosted Plaintiff on a daily basis, walked through the prison yard "loudly proclaiming" that "he had arranged to have plaintiff's cell robbed."

In September 2004, Plaintiff was transferred to another unit (One Unit) in the prison. Thereafter, Defendant Martin began seeking out African-American prisoners in One Unit, informing them that Plaintiff was a snitch. As a result, African-American prisoners in One Unit began referring to Plaintiff as a "rat" and "snitch." Plaintiff was subsequently assaulted by a prisoner. Plaintiff's personal typewriter was also "sabotaged" by another prisoner. Defendant Martin also began making "it his routine practice to leave his post in order to position himself directly behind plaintiff and, as plaintiff sat eating a meal, defendant would direct comments to any black, Muslim prisoners passing by saying that plaintiff was a 'snitch' or 'rat' or 'predator.'"

Plaintiff initiated this action on January 25, 2007, alleging that Defendant Martin had unlawfully retaliated against him. Specifically, Plaintiff alleged that Defendant Martin threatened him

with physical violence and began repeatedly referring to Plaintiff as a "snitch," "rat," "sexual predator," and "stalker" to other prisoners with the intent to motivate these prisoners to cause Plaintiff harm. Plaintiff alleged that Defendant Martin undertook this action in response to Plaintiff's grievance activity. Plaintiff also alleged that Defendant Martin engaged in ethnic intimidation in violation of Michigan law.

Plaintiff's complaint was subsequently dismissed for failure to exhaust his administrative remedies. (Dkt. #40). Plaintiff appealed the matter to the Sixth Circuit, which reversed, finding that Plaintiff "properly exhausted his First Amendment retaliation claim against Martin which, pursuant to his pleadings, can also be construed as a deliberate indifference claim under the Eighth Amendment." (Dkt. #50). Defendant Martin subsequently filed the two motions for summary judgment presently before the Court.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has

had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**I.     First Amendment Claims**

Plaintiff asserts that Defendant Martin subjected him to unlawful retaliation in violation of his First Amendment rights. Defendant asserts that he is entitled to summary judgment as to this claim because Plaintiff's allegations are "nonsensical fabrications." Defendant asserts that "calling an inmate an informant or a rat does not constitute adverse actions" sufficient to state a claim of retaliation.

Defendant asserts that he "had no knowledge of any grievances the plaintiff filed against him." Defendant also asserts that "there is no factual basis on which to attribute the alleged acts of others to Defendant Martin." Finally, Defendant asserts that Plaintiff is a snitch and a racist. Defendant's arguments are unpersuasive.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

1. Protected Conduct

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). This protection also guarantees to inmates the right to file non-frivolous grievances. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (because a prisoner's constitutional right to access the courts extends to established prison grievance procedures, filing non-frivolous grievances constitutes protected conduct); *Eby*, 481 F.3d at 440 (same).

Plaintiff asserts that Defendant retaliated against him in response to certain grievances that he filed. The grievances in question do not appear to be frivolous and Defendant has not asserted

that such is the case. Defendant has failed, therefore, to demonstrate that Plaintiff was not engaged in protected conduct.

        2.        Adverse Action Which Would Deter a Person of Ordinary Firmness

As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* In his verified complaint,[1] Plaintiff alleges that Defendant Martin repeatedly and intentionally disparaged him to other prisoners with the specific intent to motivate these prisoners to cause Plaintiff harm. The Court finds that such constitutes neither inconsequential nor de minimis action.

Defendant, relying on a decision by the Second Circuit, asserts that "calling an inmate an informant or a rat does not constitute adverse actions" sufficient to state a claim of retaliation. However, the case on which Defendant relies, *Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2001), *overruled on other grounds* as recognized in *Phelps v. Kapnolas*, 308 F.3d 180, 187 n.6 (2d Cir. 2002), fails to support his position. In *Dawes*, one guard was alleged to have "referred to Dawes as 'an informant' during discussions with unidentified inmates" whereas another guard was alleged to have "called Dawes

---

[1] As is well recognized, a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *American Civil Liberties Union of Kentucky v. Grayson County*, 591 F.3d 837, 844 n.2 (6th Cir. 2010) (citations omitted).

a 'rat' to his face on one occasion." *Dawes*, 239 F.3d at 492. The Second Circuit concluded that the comments in question did not, without more, constitute adverse action. The Court agrees that mere allegations of "name-calling" do not constitute adverse action. *See, e.g., Marr v. Case*, 2008 WL 191326 (W.D. Mich., Jan. 18, 2008).

As the *Dawes* court also recognized, however, if "the comments by the prison officials actually risked inciting other inmates against" an inmate, such may constitute adverse action sufficient to maintain a retaliation claim. *Dawes*, 239 F.3d at 493. This is consistent with Sixth Circuit authority. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (once prisoner establishes that "guards' references to him as an 'informant' or 'rat' 'actually risked inciting other inmates against the [plaintiff],' and was not merely harmless name-calling. . .it is up to the trier of fact to determine whether, under the circumstances, the acts were capable of deterring a person of ordinary firmness from engaging in the protected conduct"); *see also*, *Reynolds v. Mattson*, 2008 WL 2704750 at *2 (W.D. Mich., July 9, 2008) (calling plaintiff a homosexual "would constitute adverse action. . .if Plaintiff were able to show that such a label could affect a prisoner within the prison environment"); *Gill v. Calescibetta*, 2009 WL 890661 at *12 (N.D.N.Y., Mar. 31, 2009) ("[a] statement uttered by a prison official, in retaliation for protected activity, reasonably calculated and intended to incite inmates, prisoners, or fellow corrections workers to retaliate against an inmate can form the basis for a cognizable retaliation claim under section 1983").

As discussed above, Plaintiff has not simply alleged that Defendant Martin called him names. Instead, Plaintiff alleges that Defendant Martin undertook a prolonged campaign to intentionally disparage Plaintiff to other prisoners with the specific intent to motivate these prisoners to cause Plaintiff harm. Plaintiff has included sufficient factual allegations in his verified complaint that, if

a 'rat' to his face on one occasion." *Dawes*, 239 F.3d at 492. The Second Circuit concluded that the comments in question did not, without more, constitute adverse action. The Court agrees that mere allegations of "name-calling" do not constitute adverse action. *See, e.g., Marr v. Case*, 2008 WL 191326 (W.D. Mich., Jan. 18, 2008).

As the *Dawes* court also recognized, however, if "the comments by the prison officials actually risked inciting other inmates against" an inmate, such may constitute adverse action sufficient to maintain a retaliation claim. *Dawes*, 239 F.3d at 493. This is consistent with Sixth Circuit authority. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (once prisoner establishes that "guards' references to him as an 'informant' or 'rat' 'actually risked inciting other inmates against the [plaintiff],' and was not merely harmless name-calling. . .it is up to the trier of fact to determine whether, under the circumstances, the acts were capable of deterring a person of ordinary firmness from engaging in the protected conduct"); *see also*, *Reynolds v. Mattson*, 2008 WL 2704750 at *2 (W.D. Mich., July 9, 2008) (calling plaintiff a homosexual "would constitute adverse action. . .if Plaintiff were able to show that such a label could affect a prisoner within the prison environment"); *Gill v. Calescibetta*, 2009 WL 890661 at *12 (N.D.N.Y., Mar. 31, 2009) ("[a] statement uttered by a prison official, in retaliation for protected activity, reasonably calculated and intended to incite inmates, prisoners, or fellow corrections workers to retaliate against an inmate can form the basis for a cognizable retaliation claim under section 1983").

As discussed above, Plaintiff has not simply alleged that Defendant Martin called him names. Instead, Plaintiff alleges that Defendant Martin undertook a prolonged campaign to intentionally disparage Plaintiff to other prisoners with the specific intent to motivate these prisoners to cause Plaintiff harm. Plaintiff has included sufficient factual allegations in his verified complaint that, if

believed, would entitle him to relief. Plaintiff has also submitted sworn statements from other prisoners that Defendant Martin has engaged in or condoned unfair treatment of white prisoners by African-American prisoners. (Dkt. #104, Exhibits 17-19). Defendant counters with an affidavit in which he denies Plaintiff's allegations, as well as evidence that purports to establish that Plaintiff is a racist. Defendant's submissions simply underscore the factual disputes regarding this element. Accordingly, the Court finds that there remain genuine factual disputes as to this prong of the analysis.

### 3. Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

In his affidavit, Defendant asserts that he "had no knowledge of any grievances the plaintiff filed against him." However, in his verified complaint Plaintiff asserts that Defendant Martin had actual knowledge of the two grievances in question. (Dkt. #1 at ¶¶ 12-15). There remains, therefore, a genuine dispute as to this question.

Defendant Martin further asserts that there is no evidence that the alleged conduct by certain prisoners against Plaintiff is attributable to him. Again, the Court finds that there exist genuine factual disputes regarding this question. In his verified complaint, Plaintiff asserts that after submitting the grievances in question, Defendant Martin began a campaign to portray Plaintiff to other prisoners as a "snitch," "rat," "sexual predator," and "stalker" with the intent to motivate these prisoners to cause Plaintiff harm. Plaintiff asserts that he was subsequently harmed by certain of these prisoners. In response, Defendant Martin submits a general denial of Plaintiff's allegations. The Court, therefore, finds that there exist genuine factual disputes precluding Defendant's motion for summary judgment as to Plaintiff's First Amendment retaliation claims.

**II.     Eighth Amendment Claims**

As previously noted, the Sixth Circuit determined that Plaintiff's pleadings also articulated a "deliberate indifference claim under the Eighth Amendment." Defendant Martin asserts that he is entitled to summary judgment as to this claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine,

objectively, whether the alleged deprivation was sufficiently serious. In this respect, the prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the official deliberately indifferent to the prisoner's health or safety. *Id.*

The factual allegations in Plaintiff's verified complaint, if believed, demonstrate that Plaintiff's suffered a sufficiently serious deprivation and, furthermore, that Defendant acted with a sufficiently culpable state of mind. Defendant's submissions are insufficient to overcome Plaintiff's evidence and instead simply underscore that there remain unresolved factual disputes regarding this claim.

**III.** **Plaintiff's Claims are not barred by the PLRA's Physical Injury Requirement**

Defendant asserts that Plaintiff's First Amendment retaliation claim must be dismissed because Plaintiff "did not suffer a physical injury." In support of his position, Defendant relies on 42 U.S.C. § 1997e(e), which provides as follows:

> (e) Limitation on recovery
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

In his Complaint, Plaintiff seeks both compensatory and punitive damages. As discussed below, the Court finds that neither compensatory nor punitive damages are precluded in this matter.

A. Punitive Damages

The Sixth Circuit has not definitively determined whether § 1997e(e) prevents recovery of punitive damages.[2] After examining the matter, however, the Court concludes that § 1997e(e) does not bar punitive damages because such damages are not "for mental or emotional injury."

It is well recognized that compensatory and punitive damages "serve different purposes." *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Compensatory damages are "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." On the other hand, punitive damages "are aimed at deterrence and retribution." *Id.* Punitive damages are intended to punish unlawful conduct and prevent its reoccurrence. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996); *Memphis Community School District v. Stachura*, 477 U.S. 299, 306 n.9 (1986) (the purpose of punitive damages is to "punish the defendant for his willful or malicious conduct and to deter others from similar behavior").

Moreover, the ability to recover punitive damages is not triggered by the loss or damage that the plaintiff may have suffered, but instead are recoverable only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also, Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002) (recognizing that "[t]he standard for punitive damages in a federal civil rights action is based on the defendant's state of mind and does not require egregious or outrageous behavior") (citing *Wade*, 461 U.S. at 56).

---

[2] The Court notes that the Sixth Circuit has, in an unpublished opinion, suggested that punitive damages are not precluded by § 1997e(e). *See Miller v. Bock*, 55 Fed. Appx. 310, 312 (6th Cir., Jan. 28, 2003) (citing *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 808 n.6 (10th Cir. 1999)).

In sum, while § 1997e(e) seeks to prevent recovery of damages "for mental or emotional injury," punitive damages are intended to punish wrongdoers for their unlawful conduct and deter others from engaging in similar misconduct. Because punitive damages are not awarded "for mental or emotional injury," the Court concludes that such are not precluded by 42 U.S.C. § 1997e(e).

B. Compensatory Damages

As the Supreme Court has held, compensatory damages "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation. . ., personal humiliation, and mental anguish and suffering." *Stachura*, 477 U.S. at 307 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Defendant nonetheless asserts that § 1997e(e) prevents Plaintiff from seeking compensatory damages for violation of his First Amendment rights because he has not alleged a physical injury.

Plaintiff is not requesting damages "for mental or emotional injury," but instead seeks relief for violation of his First Amendment rights. As has been recognized, the "deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998); *see also*, *Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) (same); *Reischauer v. Jones*, 2007 WL 1521578 at *9 (W.D. Mich., May 23, 2007) (same). However, even if Plaintiff were seeking to recover damages "for mental or emotional injury," the Court finds that such are recoverable because § 1997e(e) does not apply to First Amendment claims.

Application of § 1997e(e) to Eighth Amendment claims is understandable, considering that Eighth Amendment claims implicate a prisoner's *physical* well being. On the other hand, the First

Amendment prohibits governmental interference with or deprivation of *non-physical* matters such as individual freedom, personal liberty, and spiritual autonomy. *See Percival v. Rowley*, 2005 WL 2572034 at *2 (W.D. Mich., Oct. 12, 2005). Unlike Eighth Amendment claims where allegations of physical injury dominate, it is rare for a violation of an individual's First Amendment rights to result in physical injury. *See Siggers-El v. Barlow*, 433 F.Supp.2d 811, 816 (E.D. Mich. 2006); *Percival*, 2005 WL 2572034 at *2.

To apply § 1997e(e) to First Amendment claims would effectively immunize prison officials from liability for violations of prisoners' First Amendment rights. *See Siggers-El*, 433 F.Supp.2d at 816; *Percival*, 2005 WL 2572034 at *2. The PLRA was intended to deter prisoners from filing frivolous lawsuits, not immunize prison officials against legitimate claims for violation of the First Amendment. *See Siggers-El*, 433 F.Supp.2d at 816; *Percival*, 2005 WL 2572034 at *2. Thus, application of § 1997e(e) to First Amendment claims, such as that advanced by Plaintiff, is contrary to Congressional intent. As the Honorable Richard Alan Enslen has observed:

> The Court is convinced that allowing prison officials to violate inmate First Amendment rights with impunity, resolute in the knowledge that a First Amendment physical injury will virtually never manifest itself within the meaning of section 1997e(e), is not what Congress intended when it passed the Act. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.

*Percival*, 2005 WL 2572034 at *2 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

The Court recognizes that the various circuit courts of appeal are not in agreement as to whether § 1997e(e) applies to First Amendment claims. *See, e.g., Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (holding that § 1997e(e) applies to First Amendment claims); *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998) (concluding that § 1997e(e) does not apply to First Amendment claims). The Sixth Circuit Court of Appeals does not appear to have resolved the issue. However, in an unpublished

decision, *Williams v. Ollis*, 2000 WL 1434459 (6th Cir., Sept. 18, 2000), the court, citing the Ninth Circuit's *Canell* decision, permitted a prisoner's First Amendment claims for money damages to survive a challenge that such were precluded by § 1997e(e). *Ollis*, 2000 WL 1434459 at *2 (citing *Canell*, 143 F.3d at 1213). While this authority is not controlling, the Court nonetheless finds it persuasive as to how the Sixth Circuit would resolve the issue.

The Court concludes, therefore, that § 1997e(e) has no application in this matter and thus imposes no limitation on Plaintiff's right to recover monetary damages otherwise permitted by law. Nevertheless, Plaintiff cannot recover damages based on "the jury's subjective perception of the importance of constitutional rights as an abstract matter." *Stachura*, 477 U.S. at 308. Rather, Plaintiff may recover compensatory damages only for those injuries which he can establish that he suffered.

### IV.     Plaintiff's State Law Claim

In his complaint, Plaintiff asserts a state law claim for ethnic intimidation. The relevant statute provides as follows:

> (1) A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:
>
> (a) Causes physical contact with another person.
>
> (b) Damages, destroys, or defaces any real or personal property of another person.
>
> (c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

Mich. Comp. Laws § 750.147b(1).

Defendant Martin asserts that he is entitled to governmental immunity as to this particular claim. As Defendant correctly observes, he is entitled to immunity if he demonstrates that the acts in question: (1) were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (2) were undertaken in good faith, or were not undertaken with malice; **and** (3) discretionary, as opposed to ministerial. *See Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008). Defendant bears the burden of establishing that he is entitled to immunity. *Id.* at 227-28. While Defendant may be able to satisfy the first and third prong of the analysis, as discussed herein, there remain significant factual disputes as to whether Defendant acted in good faith or with malice. In sum, Defendant has failed to carry his burden as to this affirmative defense.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Martin's Motion for Summary Judgment</u>, (dkt. #61), be **denied**; and <u>Defendant Martin's Motion for Summary Judgment</u>, (dkt. #99), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 2, 2010 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge